S & T MOTORS ET AL., APPELLANTS, V. GENERAL MOTORS CORPORATION, APPELLEE.

277 N. W. 2d 701

Filed April 24, 1979.   No. 42159.

Raymond, Olsen & Coll and Knudsen, Berkheimer, Endacott & Beam and Wright & Simmons, for appellants.

Stephen H. Nelsen of Cline, Williams, Wright, Johnson & Oldfather and Otis M. Smith and Lawrence R. Sessoms, for appellee.

Heard before BOSLAUGH, BRODKEY, CLINTON, and HASTINGS, JJ., and HICKMAN, District Judge.

BOSLAUGH, J.

This is an appeal from an order of the District Court affirming an order of the Nebraska Motor Vehicle Industry Licensing Board granting the application of the defendant, General Motors Corporation, to terminate the franchise of the plaintiff, S & T Motors.

S & T Motors is a partnership that has been an Oldsmobile dealer in Scottsbluff, Nebraska, for the last 27 years. On May 4, 1977, an explosion and fire partially destroyed the building in which S & T Motors had been operating the business. For several days after the fire S & T Motors attempted to operate the business from the used car lot. This proved to be unsatisfactory, and on May 10, 1977, S & T Motors entered into a contract with Kizzier Chevrolet Company, Inc., the other plaintiff, for a sale of the assets of S & T Motors, except the real estate, to Kizzier Chevrolet Company, Inc.

On May 11, 1977, Robert R. Slie, the managing partner of S & T Motors, and Dwayne Kizzier, the owner of Kizzier Chevrolet Company, Inc., went to Denver, Colorado, to discuss the contract with Charles J. Bretz, the Denver zone manager for Oldsmobile. Bretz was not pleased with the contract between S & T Motors and Kizzier and stated that the Buick dealer in Scottsbluff, Dalton Buick, had made

an application for the Oldsmobile franchise in Scotts-bluff.

General Motors Corporation refused to approve any transfer of the Oldsmobile franchise from S & T Motors to Kizzier Chevrolet Company, Inc., and on August 22, 1977, filed an application with the Nebraska Motor Vehicle Industry Licensing Board for permission to terminate the dealer agreement or franchise of S & T Motors.

The application alleged that General Motors was entitled to terminate the franchise of S & T Motors because S & T Motors had violated its dealer's agreement by failing to maintain dealership operations open for business for more than 7 consecutive business days, since May 4, 1977; that S & T Motors had not had an established place of business since May 4, 1977; that S & T Motors had attempted to conduct partial dealership operations at the Kizzier garage; that S & T Motors had entered into a sale agreement with Kizzier without Oldsmobile approval; and that S & T Motors had entered into a contract for the sale of the principal assets required by it for its dealership operations.

S & T Motors filed a protest alleging that it had entered into the contract for sale of its dealership and business to Kizzier within 7 business days of the explosion on May 4, 1977, and that the dealer's agreement was subject to section 60-1430, R. R. S. 1943, which required General Motors to give effect to the sale to Kizzier unless the change of ownership would be substantially detrimental to the distribution of the franchisor's motor vehicle.

After an evidentiary hearing the board found there had been no transfer of a dealership from S & T Motors to Kizzier; that it would be substantially det-rimental to the distribution of the franchisor's motor vehicle in the community if General Motors were required to grant an Oldsmobile franchise to Kizzier; and that the application for permission to

terminate the franchise of S & T Motors should be granted.

From the order of the board granting the application, S & T Motors and Kizzier appealed to the District Court where the order was affirmed. S & T Motors and Kizzier have now appealed to this court.

The case turns on the question of whether the sale from S & T Motors to Kizzier was binding upon General Motors. In the absence of any statute the rights of S & T Motors would be limited by its agreement with General Motors. S & T Motors relies upon provisions of the Motor Vehicle Industry Licensing Act, sections 60-1401.01 to 60-1435, R. R. S. 1943, which regulates and restricts the granting and termination of dealer franchises. There is no issue in this case concerning the validity of any provision of the act.

Section 60-1429, R. R. S. 1943, provides in part as follows: "Notwithstanding the terms, provisions or conditions of any agreement or franchise, the following shall not constitute good cause for the termination or noncontinuation of a franchise, or for entering into a franchise for the establishment of an additional dealership in a community for the same linemake: * * * (2) The change of ownership of the franchisee's dealership or the change of executive management of the franchisee's dealership, unless the franchisor, having the burden of proof, proves that such change of ownership or executive management will be substantially detrimental to the distribution of franchisor's motor vehicle, combination motor vehicle and trailer, motorcycle, or trailer products in the community; or * * *."

Section 60-1430, R. R. S. 1943, provides: "Notwithstanding the terms, provisions or conditions or [sic] any agreement or franchise, subject to the provisions of subdivision (2) of section 60-1429, in the event of the sale or transfer of ownership of the franchisee's dealership by sale or transfer of the business or by stock transfer or in the event of change in

the executive management of the franchisee's dealership the franchisor shall give effect to such a change in the franchise unless the transfer of the franchisee's license under this act is denied or the new owner is unable to obtain a license under this act as the case may be."

These sections create rights in franchisees which would not exist independent of the statute. Under section 60-1429(2), R. R. S. 1943, change of ownership of a franchisee's dealership is not good cause for termination of the franchise unless the franchisor proves that the change of ownership will be substantially detrimental to the distribution of franchisor's motor vehicle in the community. And, under section 60-1430, R. R. S. 1943, in the event of the sale or transfer of ownership of the franchisee's dealership by sale or transfer of the business, the franchisor shall give effect to such change in the franchise unless the transfer of the franchisee's license under the act is denied or the new owner is unable to obtain a license.

It is apparent from the record that sections 60-1429(2) and 60-1430, R. R. S. 1943, are directly applicable to the transaction between S & T Motors and Kizzier in this case. Unless some condition of the statute has not been satisfied, General Motors is bound to recognize and honor the sale of the Oldsmobile dealership from S & T Motors to Kizzier.

General Motors makes two main contentions in support of the order granting its application for permission to terminate the franchise of S & T Motors. General Motors argues that there was no transfer of a dealership, and that a transfer of the franchise would be substantially detrimental to the distribution of its motor vehicles in the community.

The first contention is based largely on the fact that there was no transfer of real estate between S & T Motors and Kizzier. "Dealership" is not defined in the statute and there is no basis on which to say

that the real estate on which the business is operated is necessarily an integral part of a dealership.

Webster's New Collegiate Dictionary (1973) defines dealership as "an authorized sales agency." The World Book Dictionary (1976) defines dealership as "the business, franchise, or territory of a dealer." We think the essential concept involved in the term dealership is the "business" of the dealer. This would include the personal property used in the operation of the business and the franchise. Real estate might or might not be properly included. Here, the real estate could no longer be used for the operation of the business so there was a logical basis for it not to be included as a part of the dealership. There was nothing unique about the real estate that would prevent the business from being operated successfully at any other suitable location.

The contract between S & T Motors and Kizzier Chevrolet Company, Inc., provided for the sale of the usable assets of the franchisee. This was sufficient to constitute a sale of the dealership or business. The fact that property damaged in the fire was not included in the sale was not controlling.

Under section 60-1429(2), R. R. S. 1943, the burden was on General Motors to prove that the change of ownership from S & T Motors to Kizzier would be substantially detrimental to the distribution of its motor vehicle in Scottsbluff, Nebraska. The evidence in regard to this issue shows that there are more than 70 Chevrolet-Oldsmobile dealerships in the Denver zone. Kizzier has been a satisfactory dealer and has adequate facilities to handle the Oldsmobile business in addition to his Chevrolet dealership. The defendant's witnesses testified they anticipated there would be as many Oldsmobile automobiles sold by Kizzier, if the franchise were granted to Kizzier, as had been sold by S & T Motors, and there would be no reduction in the number of Chevrolet automobiles sold by Kizzier.

There was evidence that the Buick dealer in Scottsbluff was in a borderline profit situation and it was necessary that he acquire additional sales opportunities if "a viable Buick operation" was to continue in the area. There had been no plan by General Motors to create a dual dealership with Buick in Scottsbluff prior to May 4, 1977, but when the S & T Motors Oldsmobile franchise became available, General Motors decided it should be awarded to Dalton Buick rather than transferred to Kizzier.

On rebuttal Dwayne Kizzier testified that his profit situation had been satisfactory due only to the mobile home business that he operated in connection with the Chevrolet dealership. Since January 1977, Kizzier had been looking for another automobile line to add to his Chevrolet dealership. An additional automobile line was necessary because the increase in fixed costs and overhead had made the automobile portion of the business unprofitable with only the Chevrolet line available.

The evidence will support a finding that there would be some benefit to the Buick dealer if he were allowed to obtain the Oldsmobile franchise. If the Buick dealer were denied the Oldsmobile franchise because the Oldsmobile dealership had been sold to Kizzier by S & T Motors, there might be some detriment to General Motors because the Buick dealer might then be forced out of business because of the inability to survive economically with the sales opportunity provided by the Buick line alone. The same might be said of Kizzier if he is limited to only the Chevrolet franchise.

Section 60-1429(2), R. R. S. 1943, requires proof that the change in ownership will be substantially detrimental to the distribution of franchisor's *motor vehicle*. We think the statute refers to the motor vehicles covered by the franchise and does not refer to all of the motor vehicles which a franchisor may distribute through various divisions and separate

franchises. Under this interpretation of the statute, the evidence was not sufficient to establish the substantial detriment requirement set out in section 60-1429(2), R. R. S. 1943.

In the absence of evidence that Kizzier would not be able to operate the Oldsmobile franchise successfully, and that the distribution of Oldsmobile automobiles in the community would be adversely affected, General Motors did not satisfy its burden of proof.

The judgment of the District Court is reversed and the cause remanded with directions to enter a judgment in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.