SCALA/O'BRIEN PORSCHE AUDI, INC., Plaintiff-Appellant, *v.*
VOLKSWAGEN OF AMERICA, INC., Defendant-Appellee.—(RICHARD J. MANCUSO, Intervenor-Appellee.)

First District (2nd Division)   No. 79-2214

Opinion filed August 19, 1980.

Allan J. Newman, of Maher & Newman, Ltd., of Chicago, for appellant Scala/O'Brien Porsche Audi, Inc.

David N. McBride and Larry R. Goldstein, of Chicago (Ross, Hardies, O'Keefe, Babcock & Parsons, of counsel), for appellee Volkswagen of America.

Jann, Carroll, Kruse, Sain & Dolin, Ltd., of Chicago (David A. Epstein and Gary A. Weintraub, of counsel), for appellee Richard J. Mancuso.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff Scala/O'Brien Porsche Audi, Inc. (Scala), sought relief under the Motor Vehicle Franchise Act (Ill. Rev. Stat. 1979, ch. 121½, par. 751 *et seq.*) (Act)[1] when its franchiser, defendant Volkswagen of America, Inc. (Volkswagen), proposed to establish a new franchise allegedly in violation of the Act. Scala appeals from the dismissal with prejudice of its complaint for failure to state a cause of action pursuant to intervenor Richard M. Mancuso's (Mancuso) motion, and from the denial of Scala's subsequent motion to vacate or amend the dismissal order. For the reasons set forth below, we reverse.

Scala, an automobile dealer, was engaged in the sale and service of new Porsche and Audi vehicles at 2750 West Lawrence Avenue in Chicago, pursuant to a two-part "Porsche Audi Dealer Agreement" (Agreement) dated August 30, 1978, with Volkswagen's Porsche Audi Division, Central Region, an automobile distributor. The first part consisted of Scala's appointment as a Porsche Audi dealer. Although it contained such specific information as the name of the dealership, its owners, management, location and the term for which the Agreement was to be in effect, no specific market area was therein delineated. The remainder of the Agreement comprised certain standard provisions applicable to all Porsche Audi dealers, such as distributor's and dealer's basic obligations, dealer's facilities and mode of operations and the grounds and means by which the Agreement might be terminated prior to the expiration of its term. Article 14(23) of the standard provisions, a definitional section, provided as follows:

> " 'Dealer's Area,' 'its Area' or 'the Area' refers to the normal area for Dealer's Porsche Audi Operations corresponding to the location of Dealer's Premises."

In a letter dated July 27, 1979, Volkswagen advised Scala that on or

---

[1] This enactment effectively became law on June 29, 1979, by Public Act 81-43.

after September 26, 1979, it intended to enter into an Agreement with an independent person who would make a significant investment in a new dealership to be located in the downtown Chicago area. Scala filed its complaint on September 20, 1979, pursuant to section 4(e)(8) of the Act, praying *inter alia* that, in the absence of a showing of "good cause" for the granting of an additional franchise within the market area served by Scala, Volkswagen should be enjoined from its issuance. Scala relied principally upon the following language of that section (Ill. Rev. Stat. 1979, ch. 121½, par. 754):

> "(e) It shall be deemed a violation for a manufacturer [or] distributor * * *:
>
> * * *
>
> (8) to grant an additional franchise of the same line make in the relevant market area previously granted to another franchisee; provided, however, that if the manufacturer wishes to grant such an additional franchise to an independent person in a bona fide relationship in which such person is prepared to make a significant investment subject to loss in such a dealership, then the manufacturer shall give notice to the existing dealer or dealers of the same line make within the market area of the proposed additional franchise at least 60 days prior to establishment of the additional franchise. Unless the parties agree upon the establishment of such additional franchise, the propriety of the granting of such additional franchise shall be determined pursuant to the guidelines of Section 12, with the franchiser having the burden of proof; * * *."

The complaint referred to but did not incorporate the Agreement and contained no mention of any other sources, written or otherwise, from which "the market area served by plaintiff" might be determined.

Mancuso filed a petition to intervene as a party defendant on September 26, 1979, asserting that he was the putative recipient of the proposed additional franchise and would be adversely affected by a determination unfavorable to Volkswagen. On September 27, 1979, the trial court granted Mancuso's petition and leave to file instanter his motion to dismiss, which alleged, among other grounds, that the complaint failed to state a cause of action. During argument of the motion on September 28, 1979, Scala acknowledged that its action was predicated entirely upon the relevant provisions of the Act and had no basis in prior law. Finding that section 4(e)(8) of "[t]he Act can only secure rights for dealers where the dealer's franchise itself spells out clearly an [exclusive] area of operation" and that the Agreement could not be construed as granting such, the trial court granted the motion and dismissed the complaint with prejudice. To Scala's query as to whether filing of an amended complaint

would be allowed, the court replied that it "wouldn't foreclose any kind of innovative thinking" but regarded amendment as "fruitless in this instance."

On October 24, 1979, Scala filed a "motion to reconsider and to vacate or amend" the court's prior dismissal order, alleging in pertinent part that dismissal without granting Scala an opportunity to amend the complaint would effectively deprive it of protection from violations of the Act by Volkswagen other than those initially claimed. Vacatur of the dismissal was sought as relief, or in the alternative "that the Order be amended to allow Plaintiff to file its amended complaint." In oral argument on its motion Scala characterized the franchise agreement as "incomplete" and alluded to "certain oral designations * * * or other written documents" supplementary to it, from which could be determined a designated market area pursuant to the Act. In denying the motion, the court observed that Scala had not previously referred in pleadings or argument to evidence extrinsic to the Agreement and that a complaint based upon a separate violation of the Act by Volkswagen would constitute a different cause of action.

Acknowledging that the Agreement lacks any explicit provision designating a specific area within which it was to operate exclusively, Scala maintains that it is not therefore precluded from coverage by section 4(e)(8). Central to this view is its assessment of the term "relevant market area" as used in that section. Although "market area" is defined in section 2(p) of the Act (Ill. Rev. Stat. 1979, ch. 121½, par. 752(p)) as "the franchisee's area of primary responsibility *as defined in its franchise*" (emphasis added), Scala distinguishes "relevant market area" as a distinct concept used only in section 4(e)(8) and a term of art in antitrust and fair trade litigation, in which determination of the relevant market area is made factually on an individual basis. (See, *e.g., Luria Brothers & Co. v. Federal Trade Com.* (3d Cir. 1968), 389 F.2d 847, *cert. denied* (1968), 393 U.S. 829, 21 L. Ed. 2d 100, 89 S. Ct. 94.) In this regard Scala looks to the rule contained in section 4(a) of the Act that "[i]n construing the provisions of this Section, the courts may be guided by the interpretations of the Federal Trade Commission Act (15 U.S.C. 45 et seq.), as from time to time amended." (Ill. Rev. Stat. 1979, ch. 121½, par. 754(a).) Accordingly, determination of "relevant market area" under the Act is interpreted as requiring only a general geographic delineation and a consideration of economic and marketing factors, both of which Scala finds in its franchise with Volkswagen, respectively as the definition of "dealer's area" quoted above and certain "sales performance" measures contained among the standard provisions of the Agreement to determine whether the individual dealer has achieved "the best sales performance

possible in its Area for Porsche Audi Automobiles." The latter include: "fair and reasonable sales objectives" established by the distributor; the ratio of dealer's sales to sales of other automobile makes in the area as compared with the same ratio for other Porsche Audi dealers; development of the dealer's sales performance "over a reasonable period of time"; and unspecified conditions in the dealer's area bearing on its sales performance. Scala claims that these criteria, considered together with the definition of "dealer's area" as a general geographic designation, are sufficient to guide the court in determination of a "relevant market area," a question of fact to be determined by the court from which an injunction under section 4(e)(8) is sought.

■■■ We find the trial court correctly determined that the complaint fails to state a cause of action. The only tenable construction of the adjective "relevant" in this context cannot impart a legal sense to "market area" different from the section 2(p) definition of the latter term, which relies explicitly upon the franchise agreement. Reference to the provisions of the Federal Trade Commission Act is discretionary under section 4(a) and must be considered in light of the detailed guidelines set forth in section 12 of the Act, pursuant to which section 4(e)(8) expressly directs the propriety of additional franchises be determined. These guidelines are addressed to protection of the rights of both franchisees and the general public and contain repeated references to "market area," but do not elucidate that term or refer to the Federal Trade Commission Act or any other extrinsic authority.

■■ From certain changes in the wording of the Act prior to its passage, Volkswagen insists that the legislature intended to preclude the trial court from making independent determinations of "market area". The Act originated as 1979 Senate Bill 1002, introduced April 11, 1979, which, in its original form, made it a violation for a manufacturer "to grant an additional franchise of the same line-make in the relevant market area previously granted to another franchise, such relevant market area to be determined exclusively by equitable principles * * *." By Amendment No. 1 to that bill, however, adopted on May 23, 1979, the provision for determination of the relevant market area according to equitable principles was eliminated and the definition of "market area" given above was added. Scala explains the deletion of the "equitable principles" language as legislative recognition that the original version represented usurpation of judicial discretion; no authority is cited for this view. Nor does Scala's theory account for the simultaneous addition of a definition of "market area" which conflicts with its interpretation of the same term as modified by "relevant." Where the meaning of a statute is at all ambiguous, amendments offered to the original bill during its passage

may be considered as an aid to construction. (See *R. S. Blome Co. v. Ames* (1937), 365 Ill. 456, 459, 6 N.E.2d 841; *Peoples Gas Light & Coke Co. v. Ames* (1934), 359 Ill. 152, 159-60, 194 N.E. 260.) We regard the subject amendment here as evincing an intention contrary to that urged by Scala and supporting the Act's reference to the individual franchise agreement alone for determination of a market area.

■ A different question is presented by the trial court's denial to Scala of leave to amend its complaint. That denial was made upon Scala's first attempt to amend and without any explicit rationale in the court's comments or written order. A fundamental purpose of the Civil Practice Act is to remove barriers which prevent the resolution of a case on its merits; to that end, the trial court's power to allow amendments should be freely exercised so that litigants may fully present an asserted cause of action (*Miller v. Enslen* (1978), 60 Ill. App. 3d 865, 868, 377 N.E.2d 282; *Thomas v. Gouwens* (1975), 25 Ill. App. 3d 663, 665, 323 N.E.2d 829). Amendment of defective pleadings should therefore be permitted unless it is clear that the defect is not curable thereby. *Dinn Oil Co. v. Hanover Insurance Co.* (1967), 87 Ill. App. 2d 206, 212, 230 N.E.2d 702; *Davis v. Hoeffken Bros., Inc.* (1965), 60 Ill. App. 2d 139, 144, 208 N.E.2d 370.

■■ In the present case, following dismissal of the complaint, Scala asked whether filing of an amended complaint should be allowed; while not expressly foreclosing it, the trial court stated several times in response that it thought "such action would be fruitless in this instance." When the request to amend was renewed in Scala's motion to reconsider, it alleged in argument the existence of "supplementary documents" that could establish a definite market area granted to it and by reference to which, as comprising part of the total Agreement said to exist between the parties, it could correct any fatal defects in the complaint. (See *Baker v. State of Illinois Department of Labor* (1969), 105 Ill. App. 2d 316, 245 N.E.2d 65 (abstract).) Although Scala did not submit a proposed amended complaint with the motion, its counsel explained in argument before this court that he believed he had been precluded from doing so by the trial court's earlier statements. While not in accord with Scala's assessment of those statements, we regard them as sufficiently ambiguous to have caused some confusion over their precise effect, and to excuse, in this instance, the otherwise critical absence of a proposed amended pleading (*e.g., Volvo of America Corp. v. Gibson* (1980), 83 Ill. App. 3d 487, 492-93, 404 N.E.2d 406). Lacking any other indication of record why leave to amend was denied at the hearing on its motion to reconsider (*Miller v. Enslen* (1978), 60 Ill. App. 3d 865, 868; *Thomas v. Gouwens* (1975), 25 Ill. App. 3d 663, 665), justice would best be served by allowing Scala an opportunity to amend its complaint so as to attempt to state a cause of action.

Reversed and remanded for proceedings consistent with the views expressed herein.

PERLIN, P. J., and DOWNING, J., concur.