**KIZZIER CHEVROLET COMPANY, INC., OF SCOTTSBLUFF, NEBRASKA, and Dwayne Kizzier, Appellants,**

v.

**GENERAL MOTORS CORPORATION, OLDSMOBILE DIVISION, Appellee.**

No. 82–1484.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1983.

Decided April 22, 1983.

Rehearing Denied May 4, 1983.

Robert G. Simmons, Jr. of Wright, Simmons & Selzer, Scottsbluff, Neb., for appellants.

David A. Svoboda, Lyman L. Larsen, Kennedy, Holland, DeLacy & Svoboda, Omaha, Neb., for appellee; Otis M. Smith, Gen. Counsel, and Timothy C. McCann, General Motors Corp., Detroit, Mich., of counsel.

Before LAY, Chief Judge, and BRIGHT and ROSS, Circuit Judges.

BRIGHT, Circuit Judge.

Kizzier Chevrolet Company, Inc., brought this action against General Motors Corporation (GM), alleging violation of the Automobile Dealers Day in Court Act, 15 U.S.C. §§ 1221–1225, and breach of a dealer sales and service agreement. The district court [1] entered judgment for GM, and Kizzier appeals. For the reasons outlined below, we affirm the judgment of the district court.

## I. *Background.*

On November 4, 1975, S & T Motors of Scottsbluff, Nebraska, entered into a franchise agreement with GM for the Oldsmobile motor vehicle line manufactured by GM. An explosion and fire destroyed the business premises of S & T Motors on May 4, 1977, to the extent that it was no longer possible for S & T Motors to operate as a dealership. On May 11, 1977, S & T Motors contracted with Dwayne Kizzier, the owner and general manager of Kizzier Chevrolet Company, Inc., for the sale of the assets of S & T Motors, excluding the real estate. The agreement was expressly conditioned upon Kizzier's receiving approval of the transfer from both the Oldsmobile Division of GM and the Nissan Motor Corp., the manufacturer of Datsuns, which were also sold by S & T Motors.

For the purposes of receiving this approval, Robert R. Slie, the managing partner of S & T Motors, and Dwayne Kizzier went to Denver, Colorado, on May 11, 1977, to see Charles J. Bretz, the Denver zone manager for the Oldsmobile Division, and L.W. Melton, Jr., the Denver zone manager for the Chevrolet Division. Neither zone manager was receptive to the idea of Kizzier's obtaining the Scottsbluff Oldsmobile dealership, and no application forms were given to or requested by Kizzier for the purpose of applying for the dealership. Kizzier and Slie returned to Scottsbluff that same day. Nevertheless, they announced the sale of S & T Motors to Kizzier the following Friday, and, on Monday, May 16, Kizzier began operating as the Oldsmobile dealership.

---

1. The Honorable Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska.

In early August 1977, GM orally informed Kizzier Chevrolet and S & T Motors that it would not approve the May 11, 1977, transfer of the Oldsmobile dealership. Thereafter, Kizzier pleaded with GM orally and in writing his reasons for wanting approval of the transfer. GM responded, explaining its preference to award the Oldsmobile dealership to Dalton Buick, the Buick dealer in Scottsbluff, because Dalton Buick was in need of an increased gross profit opportunity in order to continue to operate successfully, and that, in contrast, studies of the Chevrolet Division indicated there was a sufficient profit opportunity in the community to support a single-line Chevrolet dealership.

On August 22, 1977, GM filed an application with the Nebraska Motor Vehicle Industry Licensing Board (licensing board) for permission to terminate its dealer agreement with S & T Motors. Prior to any action by the licensing board on GM's application, S & T Motors relinquished its motor vehicle dealers' license to the board. The licensing board held an evidentiary hearing participated in by Kizzier on October 18, 1977. On December 21, 1977, the licensing board granted GM's application, finding that the sale of assets of S & T Motors did not constitute a transfer of the Oldsmobile dealership and did not obligate GM to award an Oldsmobile franchise to Kizzier; that it would be substantially detrimental to the distribution of GM vehicle products in the community if the board were to order the Oldsmobile Division to enter into a franchise with Kizzier; and that Dalton Buick of Scottsbluff, Nebraska, was qualified to sell and service Oldsmobile motor vehicles. The findings and order of the board authorized GM to proceed to select a replacement for S & T Motors' dealership. On January 6, 1978, GM sent a letter to Slie with copies going to Kizzier and the licensing board, terminating its dealer agreement with S & T Motors.

S & T Motors, as franchisee, and Kizzier Chevrolet, as an interested party, appealed the order of the licensing board to the district court of Lancaster County. The district court affirmed the order of the board

on February 28, 1978. S & T Motors and Kizzier appealed that decision to the Supreme Court of Nebraska without filing a supersedeas bond.

On March 6, 1978, after the district court affirmed the board's decision, but before the expiration of the time for filing a motion for a new trial or a supersedeas bond, GM granted the Oldsmobile franchise to Dalton Buick. On April 24, 1979, more than a year later, the Supreme Court of Nebraska reversed the judgments of the district court and the board, holding that notwithstanding the terms of the franchise agreement, sections 60–1430 and 60–1429(2) R.R. S.Neb. (Reissue 1978) required GM to give effect to the transfer of the Oldsmobile franchise to Kizzier Chevrolet, unless GM had satisfied its burden of proving in the hearing before the board that the change in ownership from S & T Motors to Kizzier would be "substantially detrimental" to the distribution of the Oldsmobile line in the Scottsbluff community. The Nebraska Supreme Court held that GM failed to satisfy this burden of proof. *S & T Motors v. General Motors Corp.*, 203 Neb. 188, 277 N.W.2d 701 (1979).

After the Nebraska Supreme Court's reversal, the district court reversed its judgment and remanded to the licensing board. On August 6, 1979, the board reversed its original decision and denied GM's application for termination. In accordance with the licensing board's reversal, GM, on September 20, 1979, entered into a dealer sales and service agreement with Kizzier Chevrolet for an Oldsmobile franchise.

On November 26, 1979, Kizzier Chevrolet filed an application with the licensing board, requesting the board to order GM to stop selling Oldsmobile motor vehicles to Dalton Buick and order Dalton Buick to stop operating as an Oldsmobile dealership until GM complied with the provisions of sections 60–1422 and 60–1424, relating to the establishment of an additional franchise in a community. On April 13, 1980, after an evidentiary hearing, the board denied the application, finding sections 60–1422

and 60–1424 inapplicable, because on March 6, 1978, the date on which GM executed the Dalton Buick-Oldsmobile franchise, no other dealer in the Scottsbluff community was selling Oldsmobile motor vehicles and products. Kizzier Chevrolet appealed this denial to the district court of Lancaster County. The record in this case does not disclose the disposition of that appeal.

On April 11, 1980, Kizzier Chevrolet filed suit against GM and Dalton Buick in the district court of Scottsbluff County, alleging that the failure of GM and Dalton to comply with the provisions of sections 60–1422 and 60–1424 before entering into a franchise agreement for an Oldsmobile dealership deprived Kizzier Chevrolet of the benefit of its purchase and of its property without due process of law. Kizzier requested an order enjoining GM from delivering to Dalton Buick and Dalton Buick from selling Oldsmobile motor vehicles or products until there had been compliance with these provisions of the licensing act. Prior to any decision by the district court, GM renewed both the Dalton Buick and the Kizzier Chevrolet agreements, effective November 1, 1980.

On January 20, 1981, the district court of Scottsbluff County granted Kizzier's request for injunctive relief. GM appealed that decision to the Supreme Court of Nebraska and filed a supersedeas bond. The Supreme Court of Nebraska reversed the decree and dismissed the action as a collateral attack on the April 13, 1980, adverse decision of the licensing board. *State of Nebraska ex rel. Kizzier Chevrolet Co., Inc. v. General Motors Corp.*, 211 Neb. 626, 319 N.W.2d 735 (1982).

Prior to the decision of the state district court, Kizzier commenced this lawsuit against GM, alleging that GM violated the Automobile Dealers Day in Court Act, 15 U.S.C. §§ 1221–1225, by failing to act in good faith in performing or complying with the terms of the November 1, 1975, dealer agreement entered into between S & T

Motors and GM and subsequently purchased by Kizzier and in terminating the agreement. The complaint also set forth breach of contract claims, alleging that GM, from May 11, 1977, to September 20, 1979, refused to perform any of its obligations under the November 1, 1975, franchise agreement, and after September 20, 1979, continued to breach the agreement by maintaining the Dalton Buick-Oldsmobile franchise without first complying with the Licensing Act. Kizzier requested $755,551 in damages. The district court rejected these contentions and found for GM. Thereafter, the district court denied Kizzier's motion for a new trial. Kizzier timely filed this appeal.

II. *Discussion.*

■ On appeal, Kizzier argues that it is entitled to damages for GM's failure to comply with the franchise agreement.[2] Kizzier contends that GM made a contractual commitment to comply with Nebraska law with respect to any requirements of that law which contravened the responsibilities and obligations of the parties as set forth in the dealer agreement and that GM breached this commitment. Specifically, Kizzier alleges four separate breaches by GM. First, Kizzier alleges a breach from May 11, 1977 to September 20, 1979. These are the dates from when Kizzier purchased the assets of S & T Motors to when GM entered into a dealer sales and service agreement with Kizzier Chevrolet for an Oldsmobile franchise. Second, Kizzier alleges a breach from May 11, 1977 to December 21, 1977. These are the dates from when Kizzier purchased the assets of S & T Motors to when the licensing board granted GM's application to terminate its dealer agreement with S & T Motors. Third, Kizzier alleges a breach from April 24, 1979 to September 20, 1979, the period after the Nebraska Supreme Court reversed the grant of GM's application to terminate its dealer agreement with S & T Motors but before GM entered into a franchise agree-

---

**2.** Kizzier has not raised any issue in its brief regarding the Automobile Dealers Day in Court Act. Accordingly, this issue is not before us, and we deem it abandoned. *See Mississippi River Corp. v. F.T.C.*, 454 F.2d 1083, 1093 (8th Cir.1972).

ment with Kizzier. Finally, Kizzier asserts that GM breached the contract after September 20, 1979, by continuing to recognize Dalton Buick as an Oldsmobile dealer even though GM had entered into a franchise agreement with Kizzier.

The federal district court determined that the franchise agreement contractually committed GM to comply with Nebraska law with respect to any requirements of Nebraska law which contravene the responsibilities and obligations of the parties as set forth in the dealer agreement. We agree with the district court's conclusion in this regard. Article VII, section H of the franchise agreement provides that:

This Agreement shall be deemed to have been made in and shall be construed in accordance with the laws of the State of Michigan.

If, however, performance by either General Motors or Dealer of any responsibility or obligation under any provision of this Agreement contravenes a law of any state or jurisdiction where such performance is to take place, the performance of such responsibility or obligation shall be in accordance with the requirements of such law only to the extent that the provision requiring such performance contravenes such law and only to the extent and while such law is deemed or held to be valid and is applicable to such performance.

Because GM made this contractual commitment, Kizzier is entitled to base a breach of contract claim for damages on those provisions of the Licensing Act which contravene the terms of the dealer agreement and with which GM allegedly failed to comply. Whether GM has breached its contract will therefore depend, at times, on the requirements imposed by Nebraska law, and how Nebraska law is interpreted. We note that although we are not bound by a trial judge's interpretation of state law, we nonetheless give it special weight in diversity cases. *Ancom, Inc. v. E.R. Squibb & Sons, Inc.,* 658 F.2d 650, 654 (8th Cir.1981); *Melia v. Ford Motor Company,* 534 F.2d 795, 799 (8th Cir.1976). We have stated that "[a]lthough we are not inextricably bound by the trial court's ruling, we nonetheless give deference to his findings on state laws where there is not strong argument that such choice of law is fundamentally deficient in analysis or otherwise lacking in reasoned authority." *Ancom, Inc. v. E.R. Squibb & Sons, Inc., supra,* 658 F.2d at 654.

A. *May 11, 1977 to September 20, 1979.*

Under the agreement, the franchise was not transferable. However, the Nebraska Motor Vehicle Licensing Act, §§ 60–1420, 60–1429(2), and 60–1430, R.R.S.Neb. (Reissue 1978), required GM to recognize the transfer of the Oldsmobile franchise from S & T Motors to Kizzier Chevrolet unless GM established at a hearing before the licensing board good cause for failing to do so.[3] In

**3.** Section 60–1420 of the Licensing Act provides:

**60–1420. Franchise; termination; hearing.** Notwithstanding the terms, provisions or conditions of any agreement or franchise, no franchisor shall terminate or refuse to continue any franchise unless the franchisor has first established, in a hearing held under the provisions of this act, that:

(1) The franchisor has good cause for termination or noncontinuance; and

(2) Upon termination or noncontinuance, another franchise in the same line-make will become effective in the same community, without diminution of the franchisee's service formerly provided, or that the community cannot be reasonably expected to support such a dealership, except that a franchisor may terminate a franchise for a particular line-make if the franchisor discontinues that

line-make and a franchisor may terminate a franchise if the franchisee's license as a motor vehicle, combination motor vehicle and trailer, motorcycle, or trailer dealer is revoked pursuant to the provisions of this act. [Neb.Rev.Stat. § 60–1420 (Reissue of 1978).] Section 60–1429 provides in relevant part:

**60–1429. Franchise; termination, discontinuance; not valid provisions.** Notwithstanding the terms, provisions or conditions of any agreement or franchise, the following shall not constitute good cause for the termination or noncontinuation of a franchise, or for entering into a franchise for the establishment of an additional dealership in a community for the same line-make:

\* \* \* \* \* \*

(2) The change of ownership of the franchisee's dealership or the change of executive management of the franchisee's dealership,

accord with the statutory provisions incorporated into the contract through Article VII, section H of the agreement, GM filed an application with the licensing board to terminate S & T Motors' dealership. The licensing board granted GM's application, finding that GM had demonstrated good cause for the termination of S & T Motors' Oldsmobile dealership. In reliance upon this order, GM terminated the S & T Motors' franchise, and after the state district court affirmed the decision of the licensing board, GM issued the Oldsmobile franchise to Dalton Buick. Almost two months after the state district court's affirmance, Kizzier appealed to the Supreme Court of Nebraska, without posting a supersedeas bond. On April 24, 1979, the Supreme Court reversed the holdings of the board and the state district court, finding that the transfer of S & T Motors' assets to Kizzier Chevrolet constituted a sale of the dealership and that GM had failed to establish the "substantial detriment" requirement of section 60–1429(2).

Kizzier Chevrolet contends that because the Supreme Court of Nebraska found that GM had failed to satisfy the requirements of Nebraska law, GM breached the contract from May 11, 1977, to September 20, 1979,

unless the franchisor, having the burden of proof, proves that such change of ownership or executive management will be substantially detrimental to the distribution of franchisor's motor vehicle, combination motor vehicle and trailer, and motorcycle, or trailer products in the community[.]
[Neb.Rev.Stat. § 60–1429(2) (Reissue of 1978).]
Section 60–1430 provides:
**60–1430. Franchise; provisions or conditions changing.** Notwithstanding the terms, provisions or conditions or any agreement or franchise, subject to the provisions of subdivision (2) of section 60–1429, in the event of the sale or transfer of ownership of the franchisee's dealership by sale or transfer of the business or by stock transfer or in the event of change in the executive management of the franchisee's dealership the franchisor shall give effect to such a change in the franchise unless the transfer of the franchisee's license under this act is denied or the new owner is unable to obtain a license under this act as the case may be. [Neb.Rev. Stat. § 60–1430 (Reissue of 1978).]

the time period in which GM refused to recognize Kizzier Chevrolet as an Oldsmobile dealership. GM asserts that its failure to recognize Kizzier as the Oldsmobile dealer and its issuance of the Oldsmobile dealership to Dalton Buick were justified by the findings and orders of the licensing board and the district court and cannot, therefore, be considered a breach of contract.

The federal district court in this case rejected Kizzier's argument and found for GM on this issue. While we do not adopt the district court's reasoning in full on this issue, we agree with the district court's determination that GM did not breach the franchise agreement during this period.[4]

█ Kizzier's basic position on appeal is that it is entitled to damages because GM failed to recognize Kizzier as the Oldsmobile dealer after Kizzier purchased the assets of S & T Motors. However, we observe that GM was contractually obligated only to comply with statutory obligations imposed by the Nebraska law. Therefore, absent a failure to comply with state law on this issue, there can be no breach of contract. The federal district court ruled, as a matter of state law, that a franchisor is not re-

4. The federal district court determined that GM was justified in relying upon the decisions of the board and the state district court in refusing to recognize the transfer of the S & T Motors Oldsmobile franchise to Kizzier Chevrolet. The district court applied the equitable principle that an act lawful when done does not become unlawful by reason of subsequent events. The district court concluded that GM's action, which was lawful at the time it was taken, did not by reason of the Supreme Court reversal become a breach of the dealer agreement. The district court also observed that Kizzier did not file a supersedeas bond. The court held that because Kizzier failed to execute or even request permission of the state district court to execute a supersedeas bond, it cannot now expect to receive damages for actions taken pursuant to judgments which remained in full force and effect until their reversal. Because we base our decision on this issue on the district court's ruling that a franchisor, under Nebraska law, is not required to recognize immediately a change in ownership of a franchise, we need not reach the district court's application of equitable principles as a bar to Kizzier's claim for damages.

quired under sections 60–1430 and 60–1429(2) of the Licensing Act to give effect to a change in ownership of a franchise until the franchisor has had the opportunity to prove the change in ownership would be substantially detrimental to the distribution of the franchisor's motor vehicles. After careful review, we conclude that it is unclear from the language of the applicable statutes whether Nebraska law requires a franchisor to give effect to a contract for a change in ownership immediately or whether the franchisor may await the action of the licensing board upon the franchisor's application to terminate that franchise. For example, section 60–1430 provides in part that

> in the event of the sale or transfer of ownership of the franchisee's dealership by sale or transfer of the business * * * the franchisor shall give effect to such a change in the franchise *unless* the transfer of the franchisee's license * * * is denied * * *. [Emphasis added.]

This section could be read as requiring that the franchisor recognize a contract for change in ownership until the licensing board has had a chance to act on this issue, or as requiring only that the franchisor recognize the contract after the board has acted. In light of these two possible constructions, we defer to the district court's interpretation on this issue. In doing so, we recognize that the issue is a close one, and that a construction contrary to that of the federal district court might have been reached by a state court. We also note that Nebraska courts have not decided this precise issue, and recently, the Nebraska Supreme Court, when confronted with a related issue which might have provided some guidance in this area, decided not to reach the issue, and instead dismissed the action as a collateral attack. *State of Nebraska ex rel. Kizzier Chevrolet Co., Inc. v. General Motors Corp., supra,* 319 N.W.2d at 736–37.[5]

In sum, we defer to the district court on this issue of state law. Thus, there can be no breach of the dealer agreement by GM for failing to recognize Kizzier as the Oldsmobile dealer when GM was not obligated under state law to do so. Absent a breach of contract, Kizzier is not entitled to damages.

B. *May 11, 1977 to December 21, 1977.*

Kizzier also contends that GM breached the franchise agreement from May 11, 1977 to December 21, 1977. This is the period from when Kizzier purchased the assets of S & T Motors to when the licensing board granted GM's application for permission to terminate its dealer agreement with S & T Motors. Kizzier argues that sections 60–1430 and 60–1429(2) required GM to recognize the change in franchise ownership until GM proved the change of ownership would be substantially detrimental to the distribution of GM's motor vehicles. As noted earlier, the district court rejected this construction and concluded that sections 60–1430 and 60–1429(2) do not require a franchisor to give effect to a contract for a change of ownership until the franchisor has had the opportunity to make the necessary showing. Thus, the court concluded that GM did not breach the contract by failing to recognize Kizzier as a dealer until the licensing board ruled on GM's application for permission to terminate its dealer agreement with S & T Motors. Because we defer to the district court's interpretation of state law on this issue, we reject Kizzier's argument.

C. *April 24, 1979 to September 20, 1979.*

Additionally, Kizzier contends that GM breached the franchise agreement from April 24, 1979, to September 20, 1979, the period after the Supreme Court reversed the board and the state district court but before GM entered into a franchise agree-

---

**5.** Specifically, the issue raised was whether the Nebraska Supreme Court's reversal in *S & T Motors v. General Motors Corp., supra,* would have the effect of reinstating the franchise of S & T Motors during the period between the state district court's decree and the Supreme Court opinion, mandating that GM apply to the licensing board and receive permission before granting a franchise to Dalton. *State of Nebraska ex rel. Kizzier Chevrolet Co., Inc. v. General Motors Corp., supra,* 319 N.W.2d at 736.

ment with Kizzier. The district court rejected Kizzier's position on this issue. The court noted that on August 6, 1979, the board reversed its earlier findings and order and denied GM's application. The district court observed that five weeks later, on September 13, 1977, GM notified Kizzier by letter that it would execute a dealer agreement with Kizzier for Oldsmobile motor vehicles. The district court found this delay not unreasonable. The record supports this finding.

D. *After September 20, 1979.*

██ Finally, Kizzier argues that GM breached the contract after September 20, 1979, the date it entered into a franchise agreement with Kizzier, by continuing to recognize Dalton Buick as an Oldsmobile dealership without complying with the applicable provisions of the Licensing Act. Under the terms of the November 1, 1975, dealer agreement, Paragraph First, the dealership Oldsmobile granted S & T Motors was "nonexclusive." However, under section 60–1422 of the Licensing Act, a franchise is exclusive to the extent that a franchisor cannot enter into a franchise for the same line-make already represented in the community without first establishing in a hearing before the licensing board good cause for the additional dealership. Article VII, section H of the dealer agreement requires GM to comply with this statutory provision if applicable. The question presented to the federal district court was whether GM was required, under the circumstances of this case, to comply with the provisions of section 60–1422. The district court concluded that it was not. The district court noted that the licensing board specifically found, in its order of April 13, 1980, the provisions of section 60–1422 inapplicable to this case, because of the absence of an ongoing Oldsmobile franchise in the Scottsbluff community at the time GM entered the franchise agreement with Dalton Buick. The district court concluded that the plaintiff could not collaterally attack this decision. The district court also indicated that, assuming that Kizzier could collaterally attack the board's decision, it

would adopt the licensing board's decision that section 60–1422 was inapplicable. The district court noted that, at the time GM issued the Oldsmobile franchise to Dalton Buick, S & T Motors had relinquished its motor vehicle dealer's license, and the licensing board, with the approval of the district court, had held that the Oldsmobile dealership had not been effectively transferred to Kizzier. The district court reasoned that because there was no Oldsmobile franchise represented in the Scottsbluff community, it was not necessary for GM to comply with the provisions of the Licensing Act relating to the establishment of an additional franchise. The district court concluded that GM did not breach the franchise agreement by failing to comply with section 60–1422.

We agree with the district court's rejection of Kizzier's contentions on this issue. We note only that the state licensing board, applying state law, held that GM was not required to comply with the provisions of section 60–1422. Where state law supplies the rule of decision, it is the duty of federal courts to ascertain and apply that law. *Stoner v. New York Life Ins. Co.,* 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284 (1940). Therefore, GM's grant to Kizzier of a non-exclusive franchise did not, under the circumstances of this case, amount to a breach of contract.

III. *Conclusion.*

In sum, we hold that GM has fully complied with the provisions of Nebraska law relating to the state regulation of automobile franchises. We therefore conclude that no breach of contract occurred, and accordingly affirm the judgment of the district court.