HONDA CARS OF BELLEVUE AND O'DANIEL MOTOR CENTER, NEBRASKA CORPORATIONS, APPELLEES, V. AMERICAN HONDA MOTOR CO., INC., FORMERLY KNOWN AS HONDA NORTH AMERICA, INC., A CALIFORNIA CORPORATION, APPELLANT.

628 N.W. 2d 661

Filed June 8, 2001.   No. S-99-1085.

Con M. Keating, of Keating, O'Gara, Davis & Nedved, P.C., and George E. Feldmiller and H. David Barr, of Berkowitz, Feldmiller, Stanton, Brandt, Williams & Stueve, L.L.P., for appellant.

Stephen H. Nelsen, of Cline, Williams, Wright, Johnson & Oldfather, for appellees.

CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ., and HANNON, Judge.

STEPHAN, J.

In an administrative proceeding pursuant to Neb. Rev. Stat. § 60-1422 (Reissue 1998), the Nebraska Motor Vehicle Industry Licensing Board (the Board) determined that American Honda Motor Company, Inc. (American Honda), had shown good cause for the establishment of a Honda motor vehicle franchise near 144th and F Streets in Omaha, Nebraska. The franchise in question was to be relocated from Council Bluffs, Iowa. Honda Cars of Bellevue, Inc. (Honda Bellevue), and O'Daniel Motor Center (O'Daniel), both Honda franchisees located in the Omaha metropolitan area, protested the application and appealed the Board's findings and order to the district court for Lancaster County pursuant to the Administrative Procedure Act, Neb. Rev. Stat. §§ 84-901 to 84-920 (Reissue 1994 & Cum. Supp. 1998). The district court reversed the findings and order of the Board, and American Honda initiated this timely appeal. We reverse, and remand with directions based upon our determination that the Board and therefore the district court lacked subject matter jurisdiction under the motor vehicle industry licensing statutes, Neb. Rev. Stat. §§ 60-1401.01 to 60-1440 (Reissue 1998).

## BACKGROUND

In 1997, Superior Honda of Council Bluffs (Superior), a Honda franchisee located in Council Bluffs, Iowa, requested permission from American Honda to relocate to a site near 144th and F Streets in Omaha, Nebraska. After internally approving the relocation, American Honda filed a letter of application with the Board seeking a determination whether the relocation would establish an additional dealership in the community and, if so, whether the requisite statutory good cause existed for such establishment. O'Daniel and Honda Bellevue protested the application to move Superior to the west Omaha area.

Following the filing of the protests, American Honda filed a motion requesting that the Board

proceed to the licensing of the relocating dealer, Superior Honda, because it is an existing dealership that under Nebraska law is not in the "community" of the protesting dealers or, alternatively, to dismiss the protests and proceed to licensing of the relocating dealership because there are no legislative constraints on relocation of an existing dealership other than licensing.

During a hearing on October 15 and 16, 1998, the Board permitted each party to present evidence bearing upon this motion. The evidence included an "Automobile Dealer Sales and Service Agreement" between American Honda and O'Daniel for the period of March 21, 1994, through March 31, 1999, and a similar agreement between American Honda and Honda Bellevue for the period of July 17, 1995, through July 31, 2000. In each agreement, American Honda granted to O'Daniel and Honda Bellevue, respectively, "the nonexclusive right to . . . identify itself as a Honda dealer at the Dealership Location," which was identified by street address in each agreement. O'Daniel and Honda Bellevue agreed "to sell and service effectively Honda Products within Dealer's Primary Market Area and to maintain premises satisfactory to American Honda." A separate document entitled "Automobile Dealer Sales and Service Agreement Standard Provisions," which was incorporated by reference into the aforementioned agreements, provided in relevant part:

Dealer understands and agrees that, while it has responsibility for the promotion and retail sale and servicing of Honda Products within the Primary Market Area, it has no territorial exclusivity. Further, American Honda reserves the right, based upon reasonable criteria, to appoint other authorized dealers of Honda Products in the Primary Market Area.

Representatives of O'Daniel and Honda Bellevue testified that the current dealer agreements were drafted by American Honda with no input from them. Each acknowledged that no "area of responsibility" or "primary market area" was stipulated in the agreement and that they were never told by American Honda that their "primary market area" constituted their "area of responsibility." Following this testimony, the Board went into

executive session and then, in open session, denied the motion to dismiss.

The Board then conducted an evidentiary hearing on the issue of whether good cause had been shown for the relocation of Superior. In a findings and order dated December 18, 1998, the Board concluded that good cause had been established. The Board noted that Superior's proposed location at 144th and F Streets in Omaha "is not reserved to either one of the protesting dealers in their franchise." It further noted that Superior was already competing with O'Daniel and Honda Bellevue and that the three dealerships had "no specific areas of responsibility set out in their franchise agreements." The Board concluded that

> the establishment of an additional dealership will result in an increase in employment and competition, which will result in better pricing and service, as well as increased convenience for the buyers of Honda products and, therefore, the application of [American Honda] to establish a Honda franchise at 144th and F Streets, Omaha, Nebraska, and receive a motor vehicle dealer's license from this Board at that location, should be and the same hereby is granted.

On appeal, the district court held that the issue of whether Superior would be permitted to relocate was properly before the Board, but that the Board's determination was not supported by the evidence because American Honda had "failed to show good cause for establishment of an additional dealership in the Omaha Metro area and that the additional dealership is in the public interest." It therefore reversed the Board's findings and order. American Honda perfected this timely appeal, which we removed to our docket on our own motion pursuant to our authority to regulate the dockets of the appellate courts. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

American Honda assigns, restated, that (1) the district court erred in concluding that O'Daniel and Honda Bellevue are in the same "community" as Superior's proposed location because the O'Daniel and Honda Bellevue franchise agreements do not specify that the proposed location is within their area of

responsibility; (2) the district court erred in concluding this was an additional dealership because the evidence established the entire Omaha metropolitan area, including Council Bluffs, was one community; (3) the district court erred in not giving the Board's decision a presumption of validity and in functioning as a trial court; and (4) the district court erred in concluding that American Honda had not established good cause to relocate Superior to the proposed Omaha location.

## STANDARD OF REVIEW

Proceedings for review of a final decision of an administrative agency shall be to the district court, which shall conduct the review without a jury de novo on the record of the agency. *Marshall v. Wimes, ante* p. 846, 626 N.W.2d 229 (2001); *Lackawanna Leather Co. v. Nebraska Dept. of Rev.*, 259 Neb. 100, 608 N.W.2d 177 (2000). A judgment or final order rendered by the district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Marshall v. Wimes, supra*; *Benitez v. Rasmussen, ante* p. 806, 626 N.W.2d 209 (2001). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

The determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach its own conclusion independent of that of the trial court. *Baye v. Airlite Plastics Co.*, 260 Neb. 385, 618 N.W.2d 145 (2000); *In re Estate of Emery*, 258 Neb. 789, 606 N.W.2d 750 (2000).

## ANALYSIS

The motor vehicle industry licensing statutes, codified at §§ 60-1401.01 to 60-1440, regulate certain aspects of the relationship between automobile franchisors and franchisees. One stated purpose of the regulatory authority conferred by the licensing statutes is to "establish guidelines for enforcement of a fair

and equitable balance" between parties to franchises and to regulate the "disparity in bargaining power" between automobile manufacturers and dealers. *In re Application of General Motors Corp.*, 232 Neb. 11, 14, 439 N.W.2d 453, 456 (1989); § 60-1401.01.

The administrative proceeding which we review here was conducted pursuant to § 60-1422, which provides:

> No franchisor shall enter into any franchise for the purpose of establishing an additional motor vehicle, combination motor vehicle and trailer, motorcycle, or trailer dealership in any community in which the same line-make is then represented, unless the franchisor has first established in a hearing held under the provisions of Chapter 60, article 14, that there is good cause for such additional motor vehicle, combination motor vehicle and trailer, motorcycle, or trailer dealership under such franchise, and that it is in the public interest.

Subject matter jurisdiction is the power of a tribunal to hear and determine a case of the general class or category to which the proceedings in question belong and to deal with the general subject matter involved. *Creighton St. Joseph Hosp. v. Tax Eq. & Rev. Comm.*, 260 Neb. 905, 620 N.W.2d 90 (2000); *Muir v. Nebraska Dept. of Motor Vehicles*, 260 Neb. 450, 618 N.W.2d 444 (2000). When an administrative agency lacks subject matter jurisdiction over a claim, the courts also lack subject matter jurisdiction on appeal. *R-D Investment Co. v. Board of Equal. of Sarpy Cty.*, 247 Neb. 162, 525 N.W.2d 221 (1995). Litigants cannot confer subject matter jurisdiction upon a tribunal by acquiescence or consent. *Muir v. Nebraska Dept. of Motor Vehicles, supra.* Administrative bodies have only that authority specifically conferred upon them by statute or by construction necessary to achieve the purpose of the relevant act. *Southeast Rur. Vol. Fire Dept. v. Neb. Dept. of Rev.*, 251 Neb. 852, 560 N.W.2d 436 (1997); *Grand Island Latin Club v. Nebraska Liq. Cont. Comm.*, 251 Neb. 61, 554 N.W.2d 778 (1996). The threshold subject matter jurisdiction issue in this case is whether the proposed relocation of Superior would result in an additional dealer in the "community" pursuant to § 60-1422 so as to enable the Board to exercise the regulatory powers conferred by that statute.

Our analysis of this issue begins with the statutory definitions for certain terms utilized in the licensing statutes, and specifically in § 60-1422. For purposes of the licensing statutes, under § 60-1401.02(20), the term "franchise" means

a contract between two or more persons when all of the following conditions are included:

(a) A commercial relationship of definite duration or continuing indefinite duration is involved;

(b) The franchisee is granted the right to offer and sell motor vehicles manufactured or distributed by the franchisor;

(c) The franchisee, as an independent business, constitutes a component of the franchisor's distribution system;

(d) The operation of the franchisee's business is substantially associated with the franchisor's trademark, service mark, trade name, advertising, or other commercial symbol designating the franchisor; and

(e) The operation of the franchisee's business is substantially reliant on the franchisor for the continued supply of motor vehicles, parts, and accessories.

Section 60-1401.02(22) defines "franchisor" as "a person who manufactures or distributes motor vehicles and who may enter into a franchise." "Franchisee" is defined in § 60-1401.02(21) as "a new motor vehicle dealer who receives motor vehicles from the franchisor under a franchise and who offers and sells such motor vehicles to the general public." The term "community" as used in § 60-1422 is defined in § 60-1401.02(23) as "a franchisee's area of responsibility as stipulated in the franchise."

American Honda argues that because its franchises with O'Daniel and Honda Bellevue do not stipulate an area of responsibility for either dealer, there is no contractually defined "community" and thus no basis for an adjudication pursuant to § 60-1422 of whether "good cause" for an additional franchise exists. O'Daniel and Honda Bellevue argue that the relevant "community" is the Omaha metropolitan area, based upon testimony establishing a course of dealing of the parties, and that the proposed relocation of Superior from Council Bluffs to Omaha triggers the requirement that good cause be established pursuant

to § 60-1422. In resolving this issue in favor of O'Daniel and Honda Bellevue, the district court first noted that Nebraska's licensing statutes do not apply to Superior in its Iowa location and that its proposed relocation to Nebraska therefore resulted in an "additional dealership" under the provisions of the licensing statutes. The court then noted that the statutory definition of "franchise" did not require a written agreement and that "[s]imply because there is no area of responsibility in the written franchise agreement does not mean areas of responsibility do not exist." The district court concluded: "If the community of a dealership is to be determined by reference to only what is in the written franchise agreement, by not defining an area of responsibility in the written franchise, a franchisor would be able to circumvent the provisions of the [motor vehicle industry licensing statutes]." The district court determined that the evidence supported O'Daniel and Honda Bellevue's contention that the "Omaha Metro" area was the relevant community for purposes of § 60-1422 and that O'Daniel and Honda Bellevue had standing to protest the application.

The plain language of the licensing statutes protects motor vehicle franchisees from the establishment of additional competing franchises within a *contractually* defined geographical "community." This is illustrated by the decision in *Chrysler Corp. v. Jim Earp Chrysler-Plymouth*, 8 Neb. App. 836, 602 N.W.2d 43 (1999), which involved an application to establish a Jeep franchise in Papillion, Nebraska. A protest was filed by another Jeep franchisee, which contended that the new dealership would be within its "community." The Board determined that the new franchise could not be established without complying with § 60-1422, despite the fact that the new franchise was not located within the community specifically named in the protesting dealer's franchise. On appeal, the district court reversed the Board's order based upon its determination that the new franchise location did not fall within the community defined in the franchise of the protesting dealer. In its analysis of this issue, the Nebraska Court of Appeals cited the statutory definition of community set forth in § 60-1401.02(23) and reasoned that in order to determine the protesting dealer's

community or area of responsibility, it was necessary to examine that dealer's franchise agreement under accepted standards of contract construction. Noting that the protesting dealer's franchise agreement described a community consisting of Omaha and several surrounding communities, but not Papillion, the Court of Appeals affirmed the district court's determination that the proposed location of the new franchise was not within the protesting dealer's "community" for purposes of § 60-1422.

O'Daniel and Honda Bellevue contend that the present case is distinguishable from *Chrysler Corp. v. Jim Earp Chrysler-Plymouth, supra*, in that their franchises with American Honda do not specify geographic areas of responsibility, which they attribute to an attempt by American Honda to exercise its superior bargaining power to circumvent Nebraska's licensing statutes. In resolving this appeal, we are bound by the pertinent statutory language. Where, as here, the Legislature has acted to regulate the relationship between automobile franchisors and franchisees and has done so pursuant to clearly articulated and specifically addressed principles, the regulation is necessarily limited to the scope so defined. See *BMW of North America v. New Motor Veh. Bd.*, 162 Cal. App. 3d 980, 209 Cal. Rptr. 50 (1984). While § 60-1401.02(23) defines "community" as the area of responsibility which is "stipulated" in the franchise, the statutorily prescribed components of a "franchise" do not include a stipulation of the franchisee's area of responsibility. See § 60-1401.02(20)(a) through (e). Thus, the licensing statutes do not require that an area of responsibility be included in a motor vehicle dealership franchise.

The O'Daniel and Honda Bellevue franchise agreements, which were in effect at the time of the proposed relocation of Superior, do not stipulate geographical areas of responsibility. Moreover, each contract provides: "This Agreement may not be varied, modified or amended except by an instrument in writing, signed by duly authorized officers of the parties, referring specifically to this Agreement and the provision being modified, varied or amended." In addition, the standard provisions of American Honda's automobile dealer sales and service agreement, which were incorporated by reference into the franchise

agreements of both O'Daniel and Honda Bellevue, provide: "The terms of the Agreement may not be modified except in writing signed by an authorized officer of the parties. Without limiting the generality of the foregoing, no course of dealing will serve to modify or alter the terms of the Agreement."

Thus, in order to conclude that a "community" could be defined in this case through a course of dealing of the parties, we would be required to disregard the plain language of § 60-1401.02(23) which defines "community" as the area of responsibility "as stipulated in the franchise" and the parties' contractual agreements which contain no such stipulation and expressly provide that they can be modified or amended only in writing. We are unable to disregard either. In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning, *Brunken v. Board of Trustees, ante* p. 626, 624 N.W.2d 629 (2001), and a court is not free to rewrite a contract or to speculate as to terms of the contract which the parties have not seen fit to include. *Kropp v. Grand Island Pub. Sch. Dist. No. 2*, 246 Neb. 138, 517 N.W.2d 113 (1994).

Courts in other jurisdictions construing similar statutes have held there is no basis for the regulation of a proposed new franchisee where the existing franchisee's agreement did not specify an area of responsibility. *Scala/O'Brien Porsche v. Volkswagen of Amer.*, 87 Ill. App. 3d 757, 760, 410 N.E.2d 205, 207, 43 Ill. Dec. 205, 207 (1980) (construing provision of Illinois' Motor Vehicle Franchise Act which regulated establishment of additional franchise in existing franchisee's "'area of primary responsibility *as defined in its franchise*'"). See, also, *Ace Cycle World, Inc. v. American Honda Motor Co.*, 788 F.2d 1225 (7th Cir. 1986). We reach the same conclusion here. Because the applicable O'Daniel and Honda Bellevue franchise agreements included no stipulated area of responsibility and by their terms precluded modification by oral agreement or course of dealing, there was no defined "community" for purposes of an adjudication under § 60-1422 and the Board had no jurisdiction to proceed under that statute. See *Kizzier Chevrolet Co. v. General Motors Corp.*, 705 F.2d 322 (8th Cir. 1983). Accordingly, the district court erred in determining that § 60-1422 was applicable to the facts presented in this record.

In reaching this result, we are constrained by the fact that the Board is an administrative agency and, as such, has only that authority specifically conferred upon it by statute or by construction necessary to achieve the purpose of the relevant act. *Southeast Rur. Vol. Fire Dept. v. Neb. Dept. of Rev.*, 251 Neb. 852, 560 N.W.2d 436 (1997). By defining "community" as that which is stipulated in the franchise agreement without requiring that the agreement include such a stipulation, the Legislature precluded the Board's authority to regulate the addition of a new franchisee over the protest of an existing franchisee whose franchise agreement, for whatever reason, does not specify a geographic area of responsibility. We note that other states have enacted regulatory schemes which utilize purely statutory definitions of a franchisee's area of responsibility. See, e.g., Del. Code Ann. tit. 6, § 4902(10) (1999), Ky. Rev. Stat. Ann. § 190.047(6) (Michie 1997), and Minn. Stat. Ann. § 80E.14 (West 1999) (all defining statutory equivalent of "community" with reference to fixed geographic radius around existing dealership, without regard to franchise agreement). Following the decision in *Scala/O'Brien Porsche v. Volkswagen of Amer., supra*, Illinois amended its Motor Vehicle Franchise Act to statutorily define the "relevant market area" of a franchisee, for purposes of regulating new franchises, as either the area defined in the franchise agreement or the area within a 10- to 15-mile radius from the principal location of the franchise, depending upon the population in the county of location. 815 Ill. Comp. Stat. Ann. 710/2(q) (Lexis 1999). See *Ace Cycle World, Inc. v. American Honda Motor Co., supra*. If the current provisions of Nebraska's motor vehicle industry licensing statutes are deemed inadequate to meet their stated purposes, recourse must be to the Legislature.

## CONCLUSION

For the reasons discussed above, the judgment of the district court is reversed with directions to remand the cause to the Board for further proceedings consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

HENDRY, C.J., and WRIGHT and McCORMACK, JJ., not participating.